Good morning, and a special welcome to the students from Saratoga High School. Is that correct? Thank you for being here today. And also, thank you, Judge Seiler. This is Judge Seiler's third and last day with us visiting from the Sixth Circuit. And we're very appreciative. And you may all be seated. And we will take up the cases in the order in which they appear on the docket. We have two cases previously submitted today, Rivelta v. Barr and U.S. v. Leupold. And we will take up Pablo v. Barr. You may proceed. Good morning, and may it please the Court. I'm Julia Rabinovich, and I represent Petitioner Mr. Raul Pablo-Colmo, who was previously removed to Guatemala. I'd like to reserve two minutes for rebuttal, please. Raul Pablo-Colmo is an indigent Mayan mom asylum seeker with a fifth-grade education. His prior counsel withdrew ten days before his final detained asylum hearing. At the hearing, despite telling the immigration judge, I do not have money to pay for an attorney, the IJN never informed Mr. Pablo-Colmo of the availability of free legal services and did not provide him with the list of those providers. Counsel, given that fact and given the regulations that deal with that, do we really even need to deal with the rest of the issues that you raised on appeal? No, Your Honor, that single issue is dispositive. If the Court agrees that the regulation here was violated, which the government does not contest, the Court need not go any further. And what do we do then if we agree with you on the regulatory violation? Remand for a new hearing or appointment of counsel or advisement of counsel? Yes, Your Honor, I believe the appropriate remedy would be remand for a new hearing. As this Court recognized in Sanchez, when an agency violates its own regulation, that can deem subsequent agency action invalid. So in this case, the appropriate course would be remand. And that is exactly what other circuits who have dealt with a violation of this exact regulation have done. In PICA, the Second Circuit remanded, and in Leslie, the Third Circuit remanded. Thank you. I would also like to point out that although the government argues in its 28Js that prejudice is required, this Court's case law forecloses a showing of prejudice when a regulation such as this one is violated. In Montes Lopez, this Court squarely held that when a petitioner's right to counsel, as set forth in governing statutes and regulations, is denied, no showing of prejudice is required. That's exactly what happened here. So in effect, this is a structural error. There's no harmless error analysis that's even possible. That's correct, Your Honor. And that is exactly what this Court recognized in Montes Lopez. Is there any case that requires prejudice to be shown in a situation like this? I do not believe there is a case that requires prejudice to be shown in a case like this. The cases cited by the government do not involve this situation. Calderon-Medina involved a violation of a regulation requiring that an individual be notified of his right to contact his consulate, an entirely different kind of regulation, one that can easily be squared with this Court's subsequent case law saying that when the regulation violated involves mere procedural regulations that facilitate the orderly conduct of business, then a prejudice showing must be made. However, when a regulation such as this one that protects fundamental rights is violated, no prejudice showing is required. What would have happened if the immigration judge had—it was a list of pro bono lawyers, right, that he or she was supposed to give to them? And if given that to the petitioner, what would have happened there? I believe that the petitioner then may have understood that he actually does not have no other option except to pay for counsel. This petitioner very clearly stated that the reason he was going to represent himself was because he could not pay for an attorney. That's why the other lawyer didn't show, apparently, right, because he or she was not paid. That's exactly right, Your Honor. The prior attorney withdrew because he had not been paid, according to him, in over two years. What role, if any, does the fact that the prior attorney, prior to his withdrawal, had helped prepare the petitioner for this case and filed pleadings, made arguments and the like? So I don't know exactly what percentage was done, but let's just say that that attorney did three-quarters of the things that were necessary to adequately represent the petitioner in this case. Would that change our analysis under the Montes Lopez case? Your Honor, I don't believe it would, but let me first begin by saying I don't think that that is an accurate representation of the amount of work prior counsel here had done. It's a hypothesis. I don't know how much was done. Yes. Even if prior counsel had done some significant portion of the work, I don't believe that that would counsel a different outcome. As this Court indicated in Zuniga, Mr. Pablo Calmo was unrepresented at the critical moment, at which point there would be no further opportunity to rectify the damage from uncounseled statements or admissions. I'm aware of no case that says that an I.J.'s duties are somehow limited if an individual previously had counsel. In fact, this Court in Montes Lopez, in Tawadros, and the Second Circuit in PICA both dealt with individuals who were previously represented, and the Court nonetheless held the I.J. to his duty. It is strange, is it not, though? I mean, the whole idea is, particularly when you have someone with as little, if you will, educational background as this petitioner, it is strange. If you had a lawyer who represented the petitioner right up to the time of the hearing, had done most of the work, had filed most of the pleadings, that notwithstanding that fact that we would be back in effect to square one because you didn't have a lawyer through the entire proceeding. You get my point? Does that make sense to you? I do, Your Honor. But the thing about immigration proceedings is that most of the substantive work happens at the ultimate hearing. Oftentimes, theories are presented for the first time at the ultimate hearing. In fact, the BIA itself has indicated that asylum cases really can't be decided on the papers. So that final hearing is really critical. And one other thing I would like to add as a practical matter is that Mr. Pablo Calmo is actually in many ways worse off for having been previously represented than he might have been if he had been unrepresented throughout. Unrepresented individuals often receive at least some basic guidance from immigration judges about what they can expect at their final hearing, at master calendar hearings. Mr. Pablo Calmo never got that. Unrepresented detained individuals can also take advantage of some limited scope assistance from pro bono attorneys who visit detention centers. Mr. Pablo Calmo would have never had reason to try to take advantage of that because he believed up until the last moment that counsel would marshal his case. Let me just ask you one other question. I know you want to save some of your time. But let's just say again, arguendo, that your client has no case, lawyer or no lawyer. Sooner or later, he's going to lose because there's no basis under the law for him to be successful. Should that play into our analysis of how Montes Lopez gets applied here? No, Your Honor. I don't believe it should. And on that point, both Leslie and Pica are instructive. In both of those cases, there had been indication that there really wasn't any viable claim for relief. But nonetheless, the court found that every individual has a due process right. And if the court has no further questions, I'd like to reserve my remaining time. Yes, you may. You may proceed, counsel. Good morning, and may it please the court. Alana J. Snyder on behalf of the United States Attorney General. Respectfully, Your Honors, we ask that the court dismiss in part and deny in part the petition for review for two reasons. First, petitioner was provided with a full and fair hearing and cannot show prejudice. And secondly, the board did not abuse its discretion when it denied petitioner's motion to reopen. What's your response to opposing counsel's point that at least under Montes Lopez, you really don't have a harmlessness analysis here. The record seems clear that when the petitioner sought, it was asked why he didn't have a lawyer. He explained that he couldn't pay. The IJ did not say, well, here's a list of pro bono counsel. You can talk to them first, and then we'll come back again. Under the circumstances, does it matter under Montes Lopez that he was not, in quotes, prejudiced, that there was no harmless error? Respectfully, Your Honors, the government asserts that there was no due process violation in this case. First, the immigration judge's duty to provide the legal services list only attaches at the opening of the hearing. And that's from the plain language of 1240.10. The plain language 1240.10, the header is hearing. The subsection A is the opening of the hearing. This was not the opening of the hearing. Petitioner had been in proceedings for five years prior. During four of which of those years, he had been represented by counsel. In any event, petitioner had been provided with the legal services list. In three separate locations in the record, and I can point, Your Honors, to those locations, petitioner had been provided with a copy of the legal services list. And— I'm sorry, where was that in the record? There are three different locations. First is Administrative Record 901, which there's a checkbox indicating that DHS had provided petitioner with a copy of the legal services list. Second, at Administrative Record 761, where petitioner signed his I-589 under penalty of perjury, that he had received a copy of the legal services list. And third, at Administrative Record 899, there is, at the bottom, a certificate of service that court staff had provided before petitioner's first hearing by the immigration judge had provided him with a copy of that legal services list. So, basically, the Montes Lopez requirement has been triply satisfied from your perspective in that the list, the same list that that case requires the IJ to provide, had already been provided three times. Is that your position? That's correct, Your Honor. And your position is that, putting those others aside, that if the requirement under the regulation is to present that list at the beginning of the hearing, it doesn't matter what's done later. So, if the lawyer quits halfway through the hearing, there's no obligation to present that? That's correct. And that was particularly acute in this case, where petitioner's attorney actually waived a reading of the rights advisals. And you can find that at AR 761. Right, but did the petitioner waive the rights? I mean, I'm looking at this, and he didn't actually—there was not a point in this, I guess, the hearing that counts, where there was actually—ended up being an order of removal, where the IJ went through the rights with petitioner. And there seems to be a lot of confusion going on in this transcript with, you know, he couldn't afford an attorney. There was not a single point where he was told, well, if you can't afford an attorney, we have identified a list of people, attorneys, who are willing to do this pro bono. And you could get a pro bono attorney to help you through this hearing. The immigration judge never stated that outright, but petitioner was provided with the list. And in his first appearance, it's clear that he was— When—you're saying he was provided with the list at the very, very beginning of this five-year period, when he didn't need the list because he had an attorney? He didn't have an attorney when he was initially provided with the list. The initial providing of the list, which is at AR 8— But he had an attorney throughout—isn't that what you just said to me, that he had an attorney for four of the five years that this thing was going on? Yes. And the certificate of service from—was—and that's appended to the notice of hearing was provided to him in advance of his first hearing. How do you know he even received that, if he had an attorney at that point? Because it was sent to the petitioner's address. And we can see that from the record. The petitioner's address on file, we have to assume that it was sent to the petitioner's address. We can assume that? Okay. If there's a certificate of service that's duly completed, I assume— Do we know that? Again, I point you to Record 899, where it's provided to Mr. Raul Pablo. And I won't read the address out loud, but it's clear that it is sent. And there's a certificate of service that's completed by court staff on the bottom. And you can see, clearly, legal services list is checked off. And this was in advance of his first hearing that was dated October 23, 2012. And, in fact, if you look at the transcript of hearing, in his first hearing, he was represented by pro bono counsel. There is a man who appears in his first hearing and labels himself as pro bono counsel, a man by the name of T. Davis. So we have all the reason to assume that petitioner actually did, in fact, receive the legal services list and, in fact, perhaps availed himself of somebody on that legal services list. Perhaps. Respectfully, Your Honors, we believe that multiple factors led to a full and fair hearing here. The petitioner was represented for four years prior to his merits hearing by an attorney, during which time that attorney filled out a Form I-589 on behalf of the petitioner, submitted nearly 100 pages of evidence in support of the claims that he made in that I-589, and worked with the petitioner to cull his claims and to support his application in an affidavit. And the immigration judge thoroughly probed the record. And our contention for this is supported by the immigration judge's explicitly going off the record immediately after the petitioner waives his right to counsel and the immigration judge realizes that the proceedings are going forward and the immigration judge says, hold on one second, I'm going off the record to read what the petitioner wrote in his I-589 so that I can question him with regards to what he wrote in that I-589. So he narrowed the scope of the inquiry in the proceedings to what was written in the 589 and the affidavit. And you can see the immigration judge questions for nearly 15 pages based upon what the petitioner wrote in the 589. Counsel, where in the record does it indicate that I think you said it was his first lawyer was a pro bono lawyer? Sure. I apologize that I don't have that immediately on hand. That would be at page 638 to 639. And you can see it says for the respondent T. Davis. And then on page 639, good morning, Your Honor, T. Davis, phonetic spelling, pro bono counselor for both of the respondents. So you can see that even at the first hearing, the petitioner was represented by pro bono counsel. So we could assume by that that he at least knew there were such things as lawyers who would appear for him without fees. Respectfully, Your Honor, we submit yes. We believe that. Do we have any idea how he matched up with this pro bono lawyer, Mr. Davis? I attempted to obtain that information online by looking at the pro bono legal services list, but couldn't match any attorney's names. They weren't readily available online. So I don't have the answer for that. And how long did Mr. Davis represent the petitioner in this four-out-of-the-five-year proceeding? Just during that initial proceeding. Initial. And then petitioner obtained his counsel for hire. And did he indicate how he paid for that? It's my understanding that petitioner actually was unable to compensate his attorney, which led to his attorney's withdrawal before the merits hearing. But he represented him for three years without fee. For nearly four years, yes. Nearly four years. Yes. And, again, submitted that Form I-589, which, contrary to opposing counsel's contention, I think is a ñ or the government asserts is not the only or the most important thing. In this particular case, petitioner was represented and sat with a representative who was able to talk with him about what claims are we going to discuss in your asylum hearing and called and narrowed the scope of the inquiry. So I see that my time is running short here. So if there are no further questions from the panel, respectfully, Your Honors, we ask that the Court dismiss in part and deny in part the petition for review. Your Honors, the argument the government is making for the first time today that ñ and so I'm looking at the red brief and I was trying to find where in the red brief any mention of these prior advisals of pro bono counsel was made, because I don't believe I was previously made aware of this, and possibly all of that argument's been waived. Your Honor, that's correct. That argument has never been raised. In fact, the government's answering brief does not even address the regulatory claim at all, anywhere in its brief. The only mention of the regulation is in passing in a part of its brief addressing the due process claims. Let me ask you this. I take what my colleague said about the waiver seriously, and I didn't see anything either about it. But if the record contains the information, we can still look at it. What's your position about the fact that the initial lawyer stated on the record that he was pro bono? Does that have any impact on our analysis? No, Your Honor. And if I can clarify, most likely that attorney was what is known as an attorney of the day in immigration court. That is why he was representing two different individuals, and that is also why that same day at that hearing, Mr. Pablo Como explained that he had actually retained counsel. So I don't believe that that individual actually represented Mr. Pablo Como. I thought he did, right? Yes, but I believe that that is. He was lying? No, Your Honor. It's like the courtroom attorney, right? He's there to represent an arraignment attorney. Exactly. Immigration courts in San Francisco, in particular, often have attorneys that appear briefly to assist people pro bono on the day of in an extremely limited scope. Is it fair to say, though, and I don't want to drag this out, but is it fair to say that because he was not charged, meaning the petitioner was not charged for this appearance by Mr. Davis, that he was at least aware, practically, that there were attorneys who would appear for him without charging a fee? I don't believe it is, Your Honor. And, moreover, this precise issue has been addressed and rejected by the Second Circuit in PICA. And, actually, it was the same. Which case is it? In PICA, which was cited in our 28J letter, there also the government raised this exact argument that because the proof of service on the notice to appear stated that he had received the list of pro bono attorneys, that that was sufficient. And that court found that that in no way obviated the immigration judge's duty to provide him with that information. And that is exactly what happened here. The notice to appear, that certificate of service, is not filled out by the immigration court. It is filled out by an immigration official who works for DHS. Your opposing counsel said there were three instances, three times, that the list or the advisal was given to your client. So that was one of them. So you're saying that didn't come from the immigration judge. The judge still has the duty. What about the other two? I don't believe any of the others were given by the immigration judge either. So one of them is just a checkbox on the Form I-589, which, as Mr. Pablo Calmo explained, his prior counsel interviewed him once in Spanish in a language he did not understand. He stated in his declaration that he actually didn't understand all of the questions his prior counsel even asked him. None of the parts of the record indicate that the immigration judge provided that information to Mr. Pablo Calmo. So basically your position is that this is an independent duty of the IJ, and whatever happened before practically doesn't matter. Does that make any sense to you? Let's just say he was represented by a pro bono counselor in the entire previous four years. Effectively, he was because the other guy didn't get paid. But he didn't pay. He had a lawyer. He knew there were people who did that. Doesn't common sense suggest that's enough? I mean, we want to have due process. We want people to know that they have this right. But is your best argument, aside from waiver, the idea that this is an independent duty of the IJ and that the IJ doesn't give this declaration, and usually at the very beginning of the proceeding, then you violated Montes and we have to send it back? Your Honor, I do believe that that is the cleanest way to address this issue, and that's because it's significant when the immigration judge explains an individual's rights in proceedings. It is simply not the same as receiving a piece of paper in the mail in a language that you don't understand. It's also not the same as coming into a busy immigration courtroom where there are a lot of other respondents and quickly being shuffled through with a brief appearance from an attorney of the day. Do you think that most people in the United States speaking good English understand legal documents when they get them? I'm not sure about that. When you read a contract from Adobe, do you understand it? Often not. That's a fair point, Your Honor. But that is why it's so critical for the immigration judge to explain that right to the person in proceedings. All right. I just want to be fair to Ms. Snyder. You did an excellent job. Good argument. The red brief was not prepared by you. It's not signed by you. However we end up deciding this, I don't want you to think that this is a criticism of you personally in any way, or your skills as a lawyer. Thank you, counsel. You did a great job, too. So thank you both. HABA v. Barr is submitted and will take up U.S. v. Craig.
judges: Siler, Wardlaw, M. Smith